UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WEWORK COMPANIES INC.,<br>Plaintiff,<br>v.<br>WEPLUS (SHANGHAI) TECHNOLOGY CO., LTD., et al.,<br>Defendants. | Case No. 5:18-cv-04543-EJD<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**<br>Re: Dkt. No. 49 |

This order amends the previous order, see Dkt. 63, in that it removes the previous dismissal with prejudice. Defendant's motion to dismiss is **GRANTED** without prejudice. *See Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction, on the other hand, must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.").

Before the Court is Defendant We+ (Shanghai) Technology's motion to dismiss for lack of subject-matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) and failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)). Motion to Dismiss ("Mot."), Dkt. 49. Defendant argues this Court lacks subject matter jurisdiction because the case is moot. This Court agrees and **GRANTS** Defendant's 12(b)(1) motion and does not reach the correlative 12(b)(6) motion.

**I.  BACKGROUND**

Plaintiff, an American corporation, provides coworking services around the world under its "WE Marks." Complaint ("Compl.") ¶¶ 1, 9, Dkt. 1. Defendant, a Chinese company, provides similar coworking services in China. *See id.* ¶ 4. In May 2018, Defendant announced a "grand opening" of its first U.S. coworking location at 755 Sansome Street in San Francisco, California.

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

1

*Id.* ¶¶ 4–5. Following this announcement, Defendant's "We+" marks were put on the walls of the Sansome location and in other promotional materials. *Id.* ¶ 29. Defendant promoted the San Francisco coworking space on several pages of its website, which showed images of the space and featured "We+" marks. *Id.* ¶ 33. Plaintiff, concerned that consumers would confuse its brand-name "WeWork" with Defendant's name "We+," initiated this trademark infringement action to enjoin Defendant from using "We+" marks in the United States, including on websites and social media platforms accessible in the United States. *Id.* ¶ 3, p. 18 (stating prayer for relief). Plaintiff also sought monetary damages. *Id.* Plaintiff brought this case against five defendants, *id.* ¶ 10–14, two remain: Defendant We+ and Defendant WePlus USA LLC, a California limited liability company. The motion before the court at hand is brought only by Defendant We+. *See* Mot. at 1.

Initially, Defendant was engaged in discussions with Shanghai Lingang Economic Development Group to lease the ground floor of 755 Sansome Street in San Francisco for 5 years with an express right to sublet office space and meeting rooms to the public. Mot. at 3; Declaration of Allen Lau in Support of Motion to Dismiss ("Lau Decl.") ¶ 7, Dkt. 49. These discussions, however, never resulted in an actual lease of the space and Defendant never operated out of the space. Lau Decl. ¶ 9; *cf.* Compl. ¶ 29 ("[T]here are no employees or customers at this location"). Thus, no lease or rental agreements relating to the use of the San Francisco, or any other location were ever operative. Lau Decl. ¶ 10.

Now, "there is no possibility that We+ Shanghai will open an office at 755 Sansome Street in the future" because the owners of the building have agreed to a consent injunction that they will not use any "We+" trademarks, names, or logos in the United States. Mot. at 3; *see also* Consent Order and Partial Dismissal of Shanghai Lingang Economic Development ("Consent Order"), Dkt. 36. Additionally, Plaintiff has since leased the entire 755 Sansome building, further preventing Defendant from leasing the space. Mot. at 3; *see also* Lau Decl. ¶ 11, Ex. C. The "We+" mark no longer appears at the 755 Sansome Street. Declaration of Xinyi Yang in Support of Motion to Dismiss ("Yang Decl.") ¶ 3–8, Dkt. 49.

1   Finally, Defendant never opened a San Francisco location and "has abandoned any plans to do so in the United States using its 'We+' mark." Lao Decl. ¶ 8. It has since removed all references of the San Francisco location from its website. Declaration of Jeffrey Z.Y. Liao in Support of Motion to Dismiss ("Liao Decl.") ¶¶ 2–8. Further, Defendant is not engaged in any discussions regarding the opening of any such locations. Lao Decl. ¶ 8.

## II. JUDICIAL NOTICE

Defendant asks this Court to take judicial notice of eight documents, which relate to its motion to dismiss. Request for Judicial Notice ("Req. Jud. Not."), Dkt. 50. Because this Court does not address the 12(b)(6) motion, it only analyzes those requests applicable to the 12(b)(1) motion; specifically, those that resolve whether Defendant is affiliated with WePlus USA (Requests 1–4, Ex. 1).

### A. Legal Standard

A court may take judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Rule 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute," that is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

### B. Discussion

Requests 1–4, Ex. 1, address information found on the California Secretary of State website and/or "PDF" documents downloaded from the site. Req. Jud. Notice. at 2–3. These requests pertain to publicly available documents, not subject to reasonable dispute, whose accuracy cannot be questioned. *See Diaz v. Intuit, Inc.*, 2018 WL 2215790, at *3 (N.D. Cal. May 15, 2018) ("Publically accessible websites and news articles are proper subjects of judicial notice." (citation omitted)). Accordingly, Defendants request for judicial notice is **GRANTED.**

## III. MOTION TO DISMISS

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

3

**A. Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder. *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011). If a federal court lacks jurisdiction over a case, it must dismiss the action. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003).

To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule 12(b)(1) motion. Fed. R. Civ. P. 12(b)(1). A defendant may either challenge jurisdiction "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic evidence (affidavits, etc.) demonstrating the lack of jurisdiction on the facts of the case. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual attack, the district court may review evidence beyond the complaint without converting the motion to dismiss into one for summary judgment. *Safe Air*, 373 F.3d at 1039; *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("A court may look beyond the complaint into matters of public record . . . ."). No presumptive truthfulness attaches to the plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating the merits of jurisdictional claims. *Gregory Vill. Partners*, 805 F. Supp. 2d at 895. Further, once the defendant presents extrinsic evidence, the plaintiff, who bears the burden of proving jurisdiction exists, must establish jurisdiction with evidence from other sources. *Id.*; *see also Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

**B. Mootness**

Mootness is raised under Rule 12(b)(1). *Id.* Federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). The inability to review moot cases derives from Article III's requirement that a "case or controversy" exist between the parties. *DeFunis*, 416 U.S. at 316. A case is moot "if subsequent events [make]

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

4

United States District Court
Northern District of California

1 it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."

*United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). A defendant's voluntary cessation of allegedly wrongful conduct is unlikely to moot a case. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). A defendant claiming its voluntary compliance moots a case bears the formidable burden of showing the wrongful conduct will not recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

### C. Ripeness

Ripeness is also raised under Rule 12(b)(1). *British Broad. Corp. v. Stander*, 2017 WL 1807592, at *3 (C.D. Cal. Mar. 18, 2017). Ripeness is designed to prevent the courts, through avoidance of premature adjudication, from "entangling themselves in abstract disagreements." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49). A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks and citation omitted). The constitutional component of ripeness overlaps with the "injury in fact" analysis for Article III standing. *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (2010). The essential inquiry is whether the issues presented are "'definite and concrete, not hypothetical or abstract.'" *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).

### D. Discussion

Defendant argues, and this Court agrees, that the case must be dismissed pursuant to Rule 12(b)(1) because it is moot. Mot. at 6–9. This is a factual Rule 12(b)(1) motion and this Court may consider Defendant's affidavits without converting the motion into one for summary judgment. *White*, 227 F.3d at 1242.

As an initial matter, Plaintiff argues that Defendant is affiliated with WePlus USA. Compl. ¶ 11. As Requests 1–4 show, Defendant has no affiliation with WePlus USA. Req. Jud. Notice at 2–3; *see also* Lau Decl. ¶¶ 12–14. Accordingly, WePlus USA's presence and activity in

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

5

the United States has no bearing on the mootness or ripeness of the case against Defendant.

### 1. Mootness[1]

The usual rule in federal cases is that an "actual controversy" must exist at all stages of review and "not simply the date the action [was] initiated." *DeFunis*, 416 U.S. at 319 (quoting *Roe v. Wade*, 410 U.S. 113, 125 (1973)). Thus, a case becomes moot when, even though it was once ripe for review, intervening events have disposed of the "actual controversy" that existed between the parties. Voluntary cessation is an exception to the mootness rule: "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC*, 568 U.S. at 91.

Plaintiff filed this lawsuit in July 2018 after learning of Defendant's intent to open a "We+" space at 755 Sansome Street in San Francisco. Compl. ¶ 29. The complaint focuses on Defendant's entry into the San Francisco market and the derivative harm to Plaintiff. *See id.* ¶¶ 2, 4–5, 7, 10–14, 20, 22, 29, 33–36 (discussing Defendant's announcement to enter the San Francisco "coworking space" market and the damage stemming from that potential entry); *see also id.* ¶¶ 12–13, 29, (discussing Defendant's use of 755 Sansome Street). When the complaint was filed, Defendant *did* intend to open an office in San Francisco and *had* placed their logo "We+" on the building and on promotional materials around the building. *Id.* ¶ 29. At *this* point, the issue of whether Defendant's "We+" mark infringed Plaintiff's "WeWork" trademark *was* ripe because Defendant had taken substantial steps toward entering the San Francisco market, specifically it had an advanced draft lease agreement with Shanghai Lingang, the owner of the space. *See id.*; Mot. at 8.

Now, however, pursuant to a Consent Order, Shanghai Lingang, cannot use the "We+" marks in the United States, meaning they cannot lease any part of 755 Sansome Street to

---

[1] Defendant presents this as a "ripeness" problem, see Mot. at 7, but this Court views it as more of a mootness issue. Because federal courts have a duty to police subject-matter jurisdiction, this Court sua sponte reclassifies this as a mootness argument. *See Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 583 (9th Cir. 1999).

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

6

Defendant. Consent Order at 1. Moreover, Plaintiff leased the entire 755 Sansome Street building and thus controls whether Defendant can lease any space in the building. Lau Decl. ¶ 11, Ex. C. Plaintiff does not allege that it is planning (or willing) to lease space to Defendant. To the contrary, Plaintiff expresses a desire to keep Defendant out of the U.S. market, making it improbable Defendant will lease space at 755 Sansome Street. Defendant also has no other lease or rental agreements relating to the use of 755 Sansome Street and "has abandoned any plans to [open coworking space] in the United States using its 'We+' mark." *Id.* ¶ 8. Hence, there is no present issue of Defendant leasing space at 755 Sansome Street, San Francisco, or the United States generally. Therefore, there is no current risk that consumers will confuse the marks and thus no trademark infringement issue. *See Brookfield Commc'n, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) ("The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." (citation omitted)). Accordingly, Defendant has met its "formidable burden" of showing the allegedly wrongful behavior—entering the San Francisco market—could not reasonably be expected to occur. *Friends of the Earth*, 528 U.S. at 189.

Recognizing these changed circumstances render the complaint moot, Plaintiff argues the case is not moot because "voluntary cessation"[2] applies. Opposition/Response to Motion to Dismiss ("Opp.") at 9–10, Dkt. 53; *Already LLC*, 568 U.S. at 91 ("A defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."). Plaintiff broadly construes the "formidable burden" standard by arguing that because Defendant's declarations do not "unconditional[ly] and irrevocabl[y]" guarantee that Defendant will "never engage" in opening

---

[2] Defendant never addresses this argument, but to ensure this Court's reasoning is not misconstrued, it is unclear if voluntary cessation even applies. Defendant did not voluntarily cease its behavior; to the contrary, Plaintiff's acquisition of 755 Sansome Street forced Defendant to forgo the allegedly wrongful conduct. Thus, the reasoning of the voluntary cessation exception is inapplicable. *See Friends of the Earth*, 528 U.S. at 193 (holding case not moot because the defendant could return to noncompliance and so "the prospect of future violations [was] a disputed factual matter); *see also id.* at 189 ("[Without voluntary cessation doctrine], the courts would be compelled to leave [t]he defendant . . . free to return to his old ways."). Here, Defendant is not free to return to pursuing 755 Sansome; thus it is unclear if voluntary cessation even applies.

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

7

"We+" coworking spaces in the United States, the case is not moot. Opp. at 9.

Plaintiff, however, misconstrues mootness jurisprudence. The standard is not *if* trademark infringement *might* occur between the parties in the future, but if there is a present risk of it occurring or if the Defendant could easily return to the allegedly wrongful behavior. *See, e.g.*, *Friends of the Earth*, 528 U.S. at 189 ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). Here, the allegedly wrongful behavior, *i.e.*, Plaintiff's "requisite personal interest," was Defendant's "grand opening" at 755 Sansome Street. Compl. ¶¶ 2, 4–5, 7, 10–14, 20, 22, 29, 33–36. But Defendant has removed all references of this opening from its website, "We+" marks no longer appear at 755 Sansome Street (or anywhere else in the United States), there is no risk of Defendant opening a space at 755 Sansome Street, and Defendant has no current plans to open a location in the United States. Lau Decl. ¶8; Yang Decl. ¶¶ 1–8; Liao Decl. ¶¶ 2–9.

Plaintiff cannot recast the complaint into a general grievance; the complaint focused on 755 Sansome Street, it is insufficient that Defendant *could* reenter the U.S. market. Opp. at 10; *cf. Friends of the Earth*, 528 U.S. at 192 ("[C]ourts [cannot] retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest . . . ."). Accepting Plaintiff's generalized argument that Defendant must show it will *never* engage in the U.S. market ignores Article III's requirement that a non-hypothetical "case or controversy" exist between the parties—it is not enough that a controversy could occur. *Cf. DeFunis*, 416 U.S. at 319–20 (holding case moot because the defendant ceased allegedly wrongful behavior and risk that changed circumstances could render case ripe insufficient).

Finally, Plaintiff argues even if the injunctive relief is moot, its damage request is still ripe. Plaintiff alleges Defendant impaired WeWork's name, reputation and goodwill. Opp. at 11 (citing Compl.¶¶ 30, 45, 53, 57, 62). First, paragraphs 45, 53, 57, 62 are about injunctive relief and thus irrelevant. Moreover, Plaintiff admits "no employees or customers" were ever served at the 755 Sansome Street location. Compl. ¶ 29. Plaintiffs never allege customers ever saw the "We+"

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

8

marks on the walls in the 755 Sansome space or the promotional materials. Rather, the entire basis of the complaint was that *if* Defendant was permitted to open a "We+" coworking space, consumers would be confused and harm to Plaintiff would result. *See id.* ¶¶ 38, 45, 53, 57, 62 (arguing why this Court should enjoin Defendant from opening the 755 Sansome Street location). Because Defendants never opened the location (and they cannot open it now), this confusion never happened and thus no harm to Plaintiff has resulted. *Cf. British-Broadcasting Corp.*, 2017 WL 1807592, at *2, 6 (holding damage claim not moot because one of the "ultimate issues" was what harm resulted from past *actual* and repeated use of plaintiff's trademark). Thus, because consumers never saw the "We+" mark, the claim for damages is also moot.

### 2. Ripeness

For the case to be ripe, "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a . . . judgment.'" *British Broad. Corp.*, 2017 WL 1807592, at *5 (quoting *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005)).

Plaintiffs again allege that a "substantial controversy" exists because (1) Defendant still markets to U.S. consumers via an interactive website and (2) the damage request.[3] Plaintiff presents three cases to support its claim that an interactive website is sufficient to establish a "controversy" within the meaning of Article III. First, Plaintiff argues that *Entrepreneur Media, Inc. v. Ariadne Capital Ltd.*, 2014 WL 12587043, at *2 (C.D. Cal. June 11, 2014) holds a Lanham Act claim exists as long as a foreign defendant's website is "accessible in the United States. Opp. at 13. To the contrary, there, the website alone was insufficient; the court concluded the Lanham Act applied because defendant continued its allegedly infringing activity and it actively solicited U.S. customers. *Entrepreneur Media*, 2014 WL 12587043, at *2. Likewise, in *Stevo Design, Inc. v. SBR Marketing Ltd.*, the court held it had jurisdiction because evidence showed defendant's website's "intended audience" was U.S. consumers and it was accessible from the United States.

---

[3] This Court addressed the damage request above and concluded it was moot.

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

9

919 F. Supp. 2d 1112, 1121 (D. Nev. 2013). Finally, in *Quokka Sports, Inc. v. Cup International Ltd.*, the court's conclusion of jurisdiction was premised on a finding that defendants "targeted the U.S. market." 99 F. Supp. 2d 1105, 1112 (N.D. Cal. 1999).

In contrast, here, Defendant's website, while accessible in the United States, does not target U.S. consumers. *See Space*, WE+ COWORK, http://en.weplus.com/spaces (last visited Sept. 26, 2019) (listing only Chinese locations). Because Defendant's website is not targeting the U.S. market, the cases Plaintiff cites are inapplicable. The fact that Defendant's website can be accessed in the United States is not enough to create a "controversy,"—it is too speculative to say that they *may* try and target the U.S. market later. Opp. at 12; *Texas v. United States*, 523 U.S. at 300 (noting that pointing to contingent future events that may not even occur does not show ripeness). Accordingly, this case is not ripe for judicial review.

## IV. SUPPLEMENTAL JURISDICTION

Defendants assert related state law claims but do not allege these independently support jurisdiction. Without federal question or diversity jurisdiction, this Court may not exercise supplemental jurisdiction over the state law claims. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002).

## V. CONCLUSION

Because no "case or controversy" remains between the parties, this Court lacks subject-matter jurisdiction and must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Spencer Enters.*, 345 F.3d at 687. Since, the lack of subject-matter jurisdiction cannot be cured, this Court **GRANTS** Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: January 7, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-04543-EJD
AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PER FRCP 12(b)(1)

10